UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

KEITH W. POLLOCK,

    Plaintiff,

        v.                                            CAUSE NO. 2:23-CV-457-JD-APR

REECE PETERSON,

    Defendant.

OPINION AND ORDER

Keith W. Pollock, a prisoner without a lawyer, is proceeding on a claim against Reece Peterson, a guard at the Jasper County Jail, for using excessive force against him in violation of the Fourteenth Amendment during an incident in August 2023. (ECF 7.) Defendant Peterson moves for summary judgment on the ground that Pollock did not exhaust his administrative remedies before filing suit as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. (ECF 26.) For the reasons stated below, the motion is granted.

Under Federal Rule of Civil Procedure 56, the court will grant summary judgment if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In deciding whether a genuine dispute of material fact exists, the court must "consider all of the evidence in the record in the light most favorable to the non-moving party, and . . . draw all reasonable inferences from that evidence" in that party's favor. *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018) (citation omitted). However, a party

opposing a properly supported summary judgment motion may not rely merely on allegations or denials in her own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). To defeat the motion, the non-moving party "must point to specific facts showing that there is a genuine issue for trial; inferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009).

Pollock was served with Defendant Peterson's motion for summary judgment and provided a notice explaining in plain language what he needed to do to respond to it. (ECF 28.) His response was due in September 2024, but that deadline passed several months ago and no response was filed. He sent the court a letter explaining generally how grievances are filed at the jail (ECF 30), but this is not a proper response to a summary judgment motion under the Local Rules of this District. Instead, the Local Rules require a party opposing a motion for summary judgment to file a supporting brief, a response to the defendant's statement of material facts with numbered paragraphs and citations to record evidence, and any additional facts with numbered paragraphs and citations to record evidence. N.D. Ind. L.R. 56-1(b)(1)-(3).

Pollock's letter is one paragraph long and is not accompanied by a supporting brief, a response to Defendant Peterson's statement of material facts containing citations to record evidence, or any additional material facts with citations to record evidence. (ECF 30.) Even though he is proceeding without counsel, he is expected to comply with applicable summary judgment procedures. *McCurry v. Kenco Logistics Servs., LLC*, 942

2

F.3d 783, 787 (7th Cir. 2019) (district courts "may strictly enforce local summary-judgment rules" even against parties who are proceeding without counsel); *Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1109 (7th Cir. 2014) ("trial courts have considerable discretion in managing the course of litigation. . . . and this is no less true in the context of summary-judgment motions"). Due to his failure to file a proper response, the court deems Defendant Peterson's facts admitted.[1] Fed. R. Civ. P. 56(e)(2); *Wienco, Inc. v. Katahn Assoc., Inc.*, 965 F.2d 565, 568 (7th Cir. 1992). The court must then consider whether summary judgment is warranted based on these facts. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021); *Wienco,* 965 F.2d at 568.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner. . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Lack of exhaustion is an affirmative defense that the defendant has the burden of pleading and proving. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The purpose of the exhaustion requirement is "to give the prison an opportunity to address the problem *before* burdensome litigation is filed." *Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020). "[S]tate law establishes the relevant administrative remedies," and courts "require strict adherence to these procedures: prisoners must take each step required by a state's administrative rules governing the prison grievance process." *Jackson v. Esser*, 105 F.4th

---

[1] The court considers the statements in Pollock's letter below, but they do not change the outcome. He sent the court a second letter stating generally that he "proved [he] filed this right," but this letter does not meaningfully add to the statements in his first letter. (*See* ECF 31.)

948, 956 (7th Cir. 2024). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). The exhaustion requirement is mandatory, and the court does not have discretion to excuse a prisoner from exhausting. *Ross v. Blake*, 578 U.S. 632, 639 (2016). Nor can an inmate refuse to exhaust his available administrative remedies because he thinks the process would be "futile." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

At the same time, inmates are only required to exhaust administrative remedies that are "available." *Woodford v. Ngo*, 548 U.S. 81, 102 (2006). The availability of a remedy is not a matter of what appears on paper, but rather, whether the process was in actuality available for the prisoner to pursue. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). "If administrative remedies are genuinely unavailable or nonexistent because, for example, prison employees failed to respond to properly filed grievances," the prisoner has "satisfied the exhaustion requirement." *Jackson*, 105 F.4th at 957.

At all relevant times, the jail had a grievance policy in place that allowed inmates to grieve matters pertaining to the conditions of their confinement.[2] (ECF 27-3.) During the period Pollock was at the jail, grievances were submitted through an electronic kiosk. (ECF 27-1 at 9-11, 17.) Inmates could also submit other types of communications to jail staff through the kiosk. (*Id.*) To delineate the type of communication being sent, an inmate could select the subject line "Grievance," "Medical Grievance," or "General

---

[2] The policy did not specify any time deadline for filing a grievance. (ECF 27 at 3.)

4

Request." (*See* ECF 27-4; ECF 27-5.) Pollock was familiar with the grievance process and submitted approximately 20 grievances through the electronic kiosk during August 2023 about a variety of matters, including finding a hair in his food, being charged for a broken broom, and needing to have bloodwork done. (ECF 27-4.) None of these grievances mentioned Defendant Peterson or complained about Defendant Peterson using excessive force against him. (*Id.*)

In October 2023, Pollock submitted a "General Request" through the electronic kiosk stating: "I need you to print off state form 54668[.]" (ECF 27-5.) The form he references is used for filing a Tort Claim with the Indiana Attorney General.[3] (ECF 27-1 at 11.) In response to his request, he was provided with a blank Indiana Tort Claim form and a blank prisoner complaint form. (ECF 27-1 at 11.) His "General Request" did not mention Defendant Peterson, describe an incident of excessive force, or seek any relief related to Defendant Peterson. (ECF 27-5.) In May 2024, after he filed this lawsuit, he submitted two more "General Requests." (ECF 27-5 at 3-4.) The first one asked for "camera footage for my lawsuit." (*Id.* at 3.) He was told there was no footage available. (*Id.*) The second one, submitted a few days later, requested the footage again and stated that the court "ask[ed] for a copy of the footage" when it screened his complaint.[4] (*Id.* at 4.)

---

[3] *See* https://www.in.gov/attorneygeneral/about-the-office/litigation/civil-torts (last visited Jan. 14, 2025).

[4] This is incorrect; the court made no request for camera footage in the screening order. (*See* ECF 7.)

Based on the above undisputed facts, it is evident that Pollock did not exhaust his administrative remedies before filing suit. The record shows he was familiar with the grievance process but did not file any grievance about the incident of excessive force with Defendant Peterson. Pollock's "General Request" submitted in October 2023 did not satisfy the grievance requirement because it bore the wrong label, did not reference Defendant Peterson, and did not describe any incident of alleged excessive force.[5] Instead, he simply asked for a blank Tort Claim form. This was not sufficient to put jail officials on notice of his claim that Defendant Peterson used excessive force against him. *See Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (observing that the purpose of the grievance process is to alert officials to a problem so that corrective action can be taken); *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002) (observing that "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought").

His other two "General Requests" submitted in May 2024 regarding camera footage are not relevant, because he submitted them to jail officials *after* he filed this lawsuit. *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999) ("[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment.").

---

[5] Pollock concedes in his letter that a "Grievance" and a "General Request" were different "button[s]" on the kiosk. (ECF 30.) Even if the court were to consider the "General Request" as a grievance, it did not contain any information about the nature of his complaint.

For the sake of completeness, the court addresses the letter Pollock sent in response to the motion for summary judgment. He states as follows:

> I am writing in regards to my grievance procedure. First you write a general request, if you get something back you asked for you don't do the grievance, because you get back what you asked for. If you do not get something back then that is when you write a grievance, so I asked for all the proper forms in General Request and got the proper answer on what was needed to be done so I didn't have to click the grievance button.

(ECF 30.) In effect, Pollock seems to be arguing that because he got the Indiana Tort Claim form he requested, he did not need to file a formal grievance about the incident with Defendant Peterson. This is incorrect under applicable law. *Jackson*, 105 F.4th at 95; *Pozo*, 286 F.3d at 1025. Nor could he bypass the grievance process simply because he thought there was no point in pursuing it. *Dole*, 438 F.3d at 809. Because it is undisputed that Pollock did not exhaust all available remedies with respect to the claim he raises in this lawsuit, the case must be dismissed without prejudice under 42 U.S.C. § 1997e(a).

For these reasons, the Defendant's motion for summary judgment (ECF 26) is GRANTED, and the case is DISMISSED WITHOUT PREJUDICE pursuant to 42 U.S.C. § 1997e(a). The clerk is DIRECTED to close this case.

SO ORDERED on January 15, 2025

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT

7